FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLIFFORD TINDALL; BRITT NEDERHOOD; ENG KWANG TAN; ERIC FEIGIN, *Plaintiffs-Appellants*, <br><br> v. <br><br> FIRST SOLAR INCORPORATED; MICHAEL J. AHEARN; ROBERT J. GILLETTE; MARK R. WIDMAR; JENS MEYERHOFF; JAMES ZHU; BRUCE SOHN; DAVID EAGLESHAM; CRAIG KENNEDY; JAMES F. NOLAN; WILLIAM J. POST; J. THOMAS PRESBY; PAUL H. STEBBINS; MICHAEL SWEENEY; JOSE H. VILLAREAL, *Defendants-Appellees*. | No. 17-15185 <br><br> D.C. No. 2:12-cv-00769-DGC <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted January 12, 2018
San Francisco, California

Filed June 13, 2018

Before:  J. Clifford Wallace, Johnnie B. Rawlinson,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Wallace

## SUMMARY[*]

### Demand Futility

The panel affirmed the district court's dismissal of a shareholder derivative action under Fed. R. Civ. P. 23.1 for failure to show demand futility.

Shareholders of First Solar, Inc., alleged that officers and directors of the company breached their fiduciary duties by failing to disclose in financial statements and press releases the existence of manufacturing and design defects in First Solar's solar panels.  The shareholders made no demand to the board before bringing the derivative action.

Reviewing for an abuse of discretion, and applying Delaware law, the panel held that the shareholders failed to show demand futility.  The panel held that the *Aronson* test for demand futility did not apply because it is limited to board business decisions.  Under the *Rales* test, demand was not excused.

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel also held that the district court did not abuse its discretion in denying plaintiff's motion to extend the deadline for filing their fourth amended complaint.

## COUNSEL

George C. Aguilar (argued) and Brian J. Robbins, Robbins Arroyo LLP, San Diego, California; Yury A. Kolesnikov, Albert Y. Chang, and Francis A. Bottini Jr., Bottini & Bottini Inc., La Jolla, California; for Plaintiffs-Appellants.

Anna Erickson White (argued), Robert L. Corez Webb, and Jordan Eth, Morrison & Foerster LLP, San Francisco, California; Sophia M. Brill and Brian R. Matsui, Morrison & Foerster LLP, Washington, D.C.; for Defendants-Appellees.

## OPINION

WALLACE, Circuit Judge:

Plaintiffs appeal from the dismissal of their shareholder derivative action under Federal Rule of Civil Procedure 23.1 for failure to show demand futility. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

### I.

First Solar, Inc. is one of the world's largest producers of photovoltaic solar panel modules. Plaintiffs, shareholders of First Solar, appeal from the dismissal of their fiduciary duty claims against eight directors and five officers of the company. Plaintiffs allege that Defendants breached their

fiduciary duties by failing to disclose in financial statements and press releases the existence of manufacturing and design defects in First Solar's solar panels. This alleged wrongdoing was also an issue in a separate but related securities fraud case, *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 752 (9th Cir. 2018). Plaintiffs did not make a litigation demand on First Solar's board of directors before filing this action.

## II.

The parties dispute the applicable standard of review. While the parties agree that our court applies abuse of discretion review to Rule 23.1 dismissals, Plaintiffs argue that such review is inconsistent with the *de novo* review that we apply to Rule 12(b)(6) dismissals. This argument has persuaded other courts. *See Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234–35 (2d Cir. 2015) (collecting cases). We, however, do not consider its merits because binding authority compels us, as a three-judge panel, to apply abuse of discretion review. *Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008).

## III.

A derivative action is an action brought by a shareholder on behalf of a corporation. *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1147 (9th Cir. 2014). Before bringing the action, the shareholder must "demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016), quoting *Rosenbloom*, 765 F.3d at 1148. Where, as here, the shareholders made no demand to the board before bringing the derivative action, they must show demand futility. *Wynn*, 829 F.3d at 1057. The law of the state

of incorporation governs whether demand is futile. *Arduini v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014). First Solar is a Delaware corporation and Delaware law, therefore, applies to this action.

Delaware has two tests for demand futility—the *Aronson* test and the *Rales* test. *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). The parties agree that Plaintiffs' claims can survive, if at all, only under the *Aronson* test. The *Aronson* test "requires that the plaintiff allege particularized facts creating a reason to doubt that '(1) the directors are disinterested and independent or that (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" *Id.*, quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). *Aronson*'s second alternative is the lynchpin of Plaintiffs' appeal. Plaintiffs argue that if the *Aronson* test applies, a showing of gross negligence by the board would excuse demand under the second alternative. Plaintiffs concede the same is not true for the *Rales* test. Accordingly, we must first decide whether the *Aronson* or *Rales* test applies to this action.

Which test applies depends, in part, on the nature of the alleged wrongdoing. *See Wood*, 953 A.2d at 140. Plaintiffs argue the *Aronson* test applies to claims involving any affirmative action by the board. They style the alleged wrongdoing here as an "approval" of financial statements or press releases concealing the product defects. Plaintiffs point to authorities showing, they argue, that a director makes a "statement" for purposes of the securities laws where, as here, they sign financial statements filed with the Securities and Exchange Commission. Defendants counter that whether the alleged wrongdoing was an affirmative action does not matter. The *Aronson* test, they say, applies not to all affirmative actions, but only to board business decisions.

We agree with Defendants. Delaware law appears clear that the *Aronson* test does not apply to all actions, but to board business decisions. In *Rales v. Blasband*, the Delaware Supreme Court held that the "essential predicate for the *Aronson* test is the fact that a *decision* of the board of directors is being challenged in the derivative suit." 634 A.2d 927, 933 (Del. 1993) (emphasis in original). The court further explained that the *Aronson* test does not apply "where the subject of the derivative suit is not a business decision of the board." *Id.* at 934.  More recently, in *Wood v. Baum*, the Delaware Supreme Court stated that "[t]he *Aronson* test applies to claims involving a contested transaction *i.e.,* where it is alleged that the directors made a conscious *business decision* in breach of their fiduciary duties." 953 A.2d at 140 (emphasis added); *see also In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009) (holding the *Rales* test applies "to show demand futility where the subject of the derivative suit is not a business decision of the board"); *Guttman v. Huang*, 823 A.2d 492, 499–500 (Del. Ch. 2003) (holding the *Rales* test applied because the allegations "do not attack a specific business judgment of the board").

Limiting the *Aronson* test to board business decisions makes sense because only those decisions implicate the business judgment rule invoked by *Aronson*'s second alternative. The business judgment rule is "a presumption that in making a *business decision* the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Gantler v. Stephens*, 965 A.2d 695, 705–06 (Del. 2009) (citation omitted) (emphasis added). "[T]he core rationale of the business judgment rule . . . is that judges are poorly positioned to evaluate the wisdom of *business decisions* . . . ." *Corwin v. KKR Fin. Holdings LLC*,

125 A.3d 304, 313 (Del. 2015) (emphasis added). Without a business decision, it is "impossible to perform the essential inquiry contemplated by *Aronson*—whether the directors have acted in conformity with the business judgment rule in approving the challenged transaction." *Rales*, 634 A.2d at 933.

Even Plaintiffs seem to recognize that *Aronson*'s application is limited to business decisions by arguing in their reply brief that the approval of financial statements and press releases is, in fact, a business decision. Plaintiffs argue that we should read "business decision" broadly because Delaware courts have associated business judgment not only with transaction decisions, but also with litigation decisions, delegations to experts, compensation decisions, and stock buyback decisions. But these types of decisions differ from those here because they involve judgments by the board as to whether to enter into a course of conduct, generally one that creates new rights or obligations on behalf of the company. By contrast, financial statements and press releases provide a snapshot of past conduct; they reflect business judgments already made. Approving financial statements and press releases generally does not involve weighing the risks and rewards of future conduct, which is the type of decision-making process the business judgment rule is designed to protect.

We view this case as more analogous to the board oversight claims to which Delaware courts regularly apply the *Rales* test. *See, e.g.*, *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017). Tellingly, Plaintiffs have cited no Delaware authority applying the *Aronson* test to a failure-to-disclose case, such as this one. Defendants have cited authorities that, while not dispositive, suggest the *Rales* test would apply. For example, in *Guttman*

*v. Huang*, plaintiffs brought both failure to disclose claims and oversight claims. 823 A.2d at 494–97. While the Delaware Chancery Court in *Guttman* did not compare the tests because the parties had agreed *Rales* applied, the court explained the reason for the parties' agreement was that "the plaintiffs do not challenge any particular business decision made by the [corporation's] board as a whole." *Id.* at 499. Likewise, *Seminaris v. Landa* involved claims that the "board failed to prevent [the CEO] from misrepresenting the corporation's financial condition" and that "board members signed misleading statements on behalf of the corporation." 662 A.2d 1350, 1354 (Del. Ch. 1995). The Delaware Chancery Court held that *Rales* applied because "plaintiff [did] not challenge a decision of [the corporation's] board of directors" or "any specific board action that approved or ratified these alleged wrongdoings." *Id.*

In sum, we conclude that the approval of financial statements and press releases here was not a board business decision implicating the *Aronson* test. The *Rales* test applies to this action. We need go no further in our analysis because Plaintiffs concede here that the *Rales* test does not excuse demand. We also need not decide whether gross negligence could excuse demand under *Aronson*'s second alternative, since *Aronson* does not apply. Therefore, the district court did not abuse its discretion by dismissing Plaintiffs' derivative action for failure to show demand futility.

## IV.

Plaintiffs also appeal from the denial of their motion to extend the deadline for filing their fourth amended complaint. Plaintiffs argue the district court abused its discretion by failing to cite Federal Rule of Civil Procedure 6(b)(1)(A), the rule governing requests for extensions of time made before the deadline expires. That rule provides

that a district court may extend a deadline "for good cause." Fed. R. Civ. P. 6(b)(1)(A).

We reject Plaintiffs' argument. Rule 6 provides that the court *may* grant the motion for good cause, not that it must do so. Fed. R. Civ. P. 6(b)(1)(A). While district courts normally grant these requests in the absence of bad faith or prejudice to the adverse party, *see Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010), the district court properly concluded that Plaintiffs had not shown good cause. "That the district court did not recite the text of [the rule] or employ a specific phrase . . . is not determinative." *United States v. Ogles*, 440 F.3d 1095, 1104 (9th Cir. 2006) (en banc). What matters is that the district court actually considered the proper standard. *See id.* Here, the court viewed the deadline extension, which would have prolonged the time to amend until after the resolution of Plaintiffs' motion to intervene in a related action, as an attempt to circumvent the district court's prior rulings denying Plaintiffs discovery. The district court's determination that "the Court cannot justify delaying this case further while Plaintiffs pursue an appeal of their effort to obtain improper discovery" is another way of saying Plaintiffs have not shown good cause. Our case of *United States v. Signed Personal Check No. 730*, 615 F.3d 1085, 1091–92 (9th Cir. 2010) is not to the contrary. There, the district court erred not because it failed to recite the legal standard, but because this failure led it to apply the *wrong* standard. *Id.* Here, the district court applied the right standard, simply without reciting it.

**AFFIRMED.**